FILED

1  HARMEET K. DHILLON (SBN: 207873)
2  harmeet@dhillonsmith.com
   KEN LAU (SBN: 261354)
3  klau@dhillonsmith.com
   JOHN-PAUL DEOL (SBN: 284893)
4  jpdeol@dhillonsmith.com
5  DHILLON & SMITH LLP
6  177 Post Street, Suite 700
   San Francisco, CA 94108
7  Tel:   (415) 433-1700
8  Fax:   (415) 520-6593

2013 OCT 23  PM 3: 40

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
SANTA ANA

BY___

9  Attorneys for PLAINTIFF
10  ADVANTAGE SALES & MARKETING LLC
   d/b/a INTEGRATED MARKETING SERVICES
11

12              **UNITED STATES DISTRICT COURT**

13      **CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION**

14

| | |
|---|---|
| 15  ADVANTAGE SALES & MARKETING LLC d/b/a INTEGRATED MARKETING SERVICES, | Case No.:   SACV13 - 01664 JLS (RNBx) |
| 16 | **COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF** |
| 17 | |
| 18              Plaintiff, | **1. BREACH OF CONTRACT** |
| 19      v. | **2. MISAPPROPRIATION OF TRADE SECRETS IN VIOLATION OF THE NEW JERSEY TRADE SECRETS ACT (N.J.S.A. 56:15-1, et seq.)** |
| 20  LOIS MARKS, | |
| 21 | |
| 22              Defendant. | |
| 23 | **3. UNFAIR COMPETITION – New Jersey Common Law** |
| 24 | |
| 25 | **DEMAND FOR JURY TRIAL** |

26
27
28

Complaint for Damages,
Declaratory, and Injunctive Relief                - 1 -                **DHILLON & SMITH LLP**

1  Plaintiff Advantage Sales & Marketing LLC, doing business as Integrated

2  Marketing Services ("Integrated" or "Plaintiff") files this complaint for damages and

3  injunctive relief against Defendant Lois Marks ("Marks" or "Defendant").

**INTRODUCTION**

5  1.  On the same day that she resigned from her employment as a senior

6  marketing executive with Irvine-based Integrated, Lois Marks stole a crucial,

7  confidential document containing Integrated's highly confidential trade secret

8  information regarding the relationship between Integrated and one of its largest

9  clients, and then announced that she was about to join a direct competitor of

10  Integrated. Marks' misconduct, which breached her contract with Integrated, violates

11  the clear terms of the New Jersey Trade Secret Act, and also violates New Jersey

12  common law of unfair competition. Marks' illegal conduct cannot be permitted to

13  stand, nor may Marks or those acting in concert with her be permitted to profit from

14  their ill-gotten gains. Through this Complaint, Integrated seeks compensatory and

15  injunctive relief to remedy the damage done by Marks. Absent the requested

16  injunctive relief, Integrated will suffer irreparable harm and injury that could amount

17  to tens of millions of dollars of lost business.

**PARTIES**

19  2.  Integrated is a California limited liability company with its principal

20  place of business in Irvine, Orange County, California.

21  3.  Marks is a resident of the State of New Jersey, and a former employee

22  of Integrated.

**JURISDICTION AND VENUE**

24  4.  This Court has subject-matter jurisdiction over this matter pursuant to

25  28 U.S.C. § 1332 because Integrated and Marks are residents of different states, and

26  the value of the trade secrets and contractual obligations that Integrated seeks to

27  protect in this lawsuit exceeds $75,000.

28  5.  The Court has authority to issue declaratory and injunctive relief under

1  28 U.S.C. § 2201 *et seq.*, Rules 57 and 65 of the Federal Rules of Civil Procedure,

2  and its inherent equitable powers.

3       6.      The Confidentiality Agreement at issue contains valid and enforceable

4  forum-selection clauses, wherein Marks contractually agreed to submit to the

5  jurisdiction of this District, and to waive any objections thereto.

6       7.      Venue is proper in this District under 28 U.S.C. § 1391(b)(2), because a

7  substantial part of the property that is the subject of the action is situated here, as

8  Integrated is headquartered here.

9                                  **FACTUAL ALLEGATIONS**

10       8.      Integrated is a premier North American sales and marketing agency that

11  provides sales, merchandising, category management and marketing services to

12  manufacturers, suppliers and producers of food products and consumer packaged

13  goods. Integrated operates throughout the United States, and employs tens of

14  thousands of individuals throughout all fifty states.

15       9.      Between August 2012 and October 2013, Marks was employed by

16  Integrated, holding the title "VP Client Services Agency." As a condition of her

17  employment, Marks signed a Non-Solicitation, Property Protection &

18  Confidentiality Agreement ("Confidentiality Agreement") (attached as Ex. A).

19       10.     By virtue of her position as VP Client Services Agency, Marks had

20  access to certain highly confidential and proprietary Integrated information,

21  including Integrated's overall business strategy, key employees, financial

22  information, organizational charts, pricing, client lists, timing of strategic client plan

23  implementation, and other confidential client information.

24       11.     Marks' duties at Integrated exclusively related to a single client with

25  global operations ("Global Client"), which has been a client of Integrated for over 15

26  years and which generates total revenue for Integrated of millions of dollars,

27  including millions in the business unit for which Marks worked. Marks' relationship

28  with Global Client was so continuous and regular that when she was not physically

---

Complaint for Damages,
Declaratory, and Injunctive Relief

- 3 -

**DHILLON & SMITH LLP**

1   working at her home, she worked onsite at a New Jersey office of Global Client.

2       12.    On or around October 16, 2013, Marks used her Integrated e-mail

3   account to send a confidential Integrated document, in the form of a detailed internal

4   PowerPoint presentation, to her personal e-mail account at lpmarks@optonline.com.

5   The document ("Confidential Document") contains Integrated's complete business

6   strategy with regard to Global client. A screen shot of the email in which Marks

7   transmitted the Document to herself is attached as Ex. B.

8       13.    The Confidential Document is a highly confidential business document

9   belonging exclusively to Integrated, whose access at Integrated was guarded with

10  great care. The Confidential Document was not generally known – either as to its

11  contents or even to its very existence – outside Integrated. The Confidential

12  Document was password-protected on Integrated's servers. The Confidential

13  Document is "Confidential Information" within the meaning of that term as defined

14  in Marks' Confidentiality Agreement (Ex. A).

15      14.    The Confidential Document contained very sensitive information

16  pertaining to the business relationship between Global Client and Integrated,

17  including strategic planning, staffing, revenue targets, the timing and frequency of

18  meetings between Integrated and Global Client marketing teams, and other highly

19  confidential details of the Integrated/Global Client business relationship, broken

20  down to the level of how Integrated would approach specific lines of business and

21  specific brands within those lines of business at Global Client. Importantly, the

22  document focused on Integrated's recommendations for meeting Global Client's

23  2014 consumer & shopper marketing needs; thus, it remains relevant and highly

24  valuable at the present, and for the foreseeable future.

25      15.    The Confidential Document was used for training Global Client's

26  dedicated client service team within Integrated, and incorporated Integrated's

27  proprietary philosophy and approach to serving the consumer and shopper marketing

28  needs of a client such as Global Client, which it has successfully served for over a

1   decade.

2   16.   Within two hours after sending the Confidential Document to herself,

3   Marks resigned her employment with Integrated on October 16, with an effective

4   resignation date of October 25, 2013. She was relieved of her duties at Integrated

5   immediately, and her access to Integrated computer servers and email was

6   terminated.

7   17.   At the time of her resignation, Marks informed two Integrated managers

8   that she was joining a competitor of Integrated's, Geometry Global.

9   18.   At the time that she emailed the Confidential Document to her private

10  email address before resigning, Marks had no legitimate need to review or access the

11  Confidential Document whatsoever.

12  19.   Upon information and belief, Marks has unlawfully disclosed and will

13  continue to disclose Integrated's confidential business information and trade secrets,

14  including competitively sensitive confidential materials such as the Confidential

15  Document, to other individuals not authorized to have such information. Upon

16  information and belief, Marks and those acting in concert with her will use

17  unorthodox means to solicit Integrated's clients, armed with that wrongfully

18  obtained proprietary and confidential information, and possibly other wrongfully

19  obtained information, in violation of Marks' contractual obligations under the

20  Confidentiality Agreement, and in violation of established trade secret and unfair

21  competition law.

## FIRST CAUSE OF ACTION

### Breach of Contract

24  20.   Integrated incorporates by reference and re-alleges as if fully stated

25  herein the allegations set out in the preceding paragraphs.

26  21.   All Integrated employees in management roles are required to enter into

27  confidentiality agreements as a condition of their employment with Integrated.

28  22.   The Confidentiality Agreement is a valid, enforceable contract through

1   which Integrated provided Marks with employment and eligibility for future salary

2   increases and continued receipt and access to trade secrets and other confidential

3   and/or proprietary information associated with Marks' position.  In exchange, Marks

4   was barred under the Confidentiality Agreement from misusing and improperly

5   disclosing Integrated trade secrets and confidential information, including retaining

6   such information after the termination of her employment.

7        23.    Integrated has performed all of its obligations under the Confidentiality

8   Agreement, except those whose performance was excused by Marks' actions.

9        24.    As set forth in the paragraphs above, Marks materially breached, and

10  continues to materially breach, the terms of the Confidentiality Agreement by

11  engaging in specific acts which constitute unauthorized disclosures of Integrated's

12  trade secrets and confidential information, including but not limited to using her

13  Integrated company e-mail to send to her personal e-mail account confidential

14  Integrated documents, including the Confidential Document, concerning Integrated's

15  proprietary business strategy.

16       25.    As a direct and proximate result of Marks' material breaches of the

17  Confidentiality Agreement, Integrated has been harmed and is entitled to injunctive

18  relief and monetary damages against Marks in an amount to be determined at trial,

19  but substantially exceeding the minimum unlimited jurisdiction of this Court,

20  exclusive of attorneys' fees and costs.

**SECOND CAUSE OF ACTION**

**Misappropriation of Trade Secrets in Violation of**

**the New Jersey Trade Secrets Act (N.J.S.A. 56:15-1, et seq.)**

24       26.    Integrated incorporates by reference and re-alleges as if fully stated

25  herein the allegations set out in the preceding paragraphs.

26       27.    While employed at Integrated, Marks was entrusted with substantial

27  information pertaining to Integrated's overall business strategy, key employees,

28  financial information, internal organizational charts, pricing, client lists, client

1   solicitation and retention plans and strategies, customers and client preferences, cost

2   and pricing information, and other confidential client information, particularly

3   concerning Global Client, the only Integrated client with which Marks worked

4   directly while employed by Integrated.

5       28.    The information to which Marks was privy during her employment at

6   Integrated – including, without limitation, the Confidential Document – included

7   trade secrets. The information in the Confidential Document and much of the other

8   information belonging to Integrated to which Marks was privy was and remains

9   secret and proprietary; Integrated derives substantial, independent economic value

10   from its trade secrets; and the information has been the subject of efforts that were

11   more than adequate and reasonable under the circumstances to protect its secrecy.

12       29.    Integrated has invested substantial time, energy, and money into the

13   development of its trade secrets. Integrated has invested millions of dollars over a

14   period of years in developing and nurturing its relationship with Global Client, much

15   of which investment and strategy is reflected in the Confidential Document – a

16   roadmap of how Integrated would handle Global Client's consumer & shopper

17   marketing needs across numerous product lines and brands during the year 2014.

18       30.    Integrated's trade secrets have economic value in that they contain

19   confidential information concerning Integrated's overall business strategy, key

20   employees, financial information, internal organizational charts, pricing, client lists,

21   client solicitation and retention plans and strategies, customers and client

22   preferences, cost and pricing information, and other confidential and proprietary

23   information not generally known to others. Knowledge of this information has

24   allowed Integrated to compete in the food products and consumer packaged goods

25   marketing industry by timely delivering high-precision services catered to the

26   specific needs and special characteristics and requirements of each of its clients,

27   many of whom are multinational corporations such as Global Client. Integrated has

28   gained and retained significant market share from its confidential information –

1    including the Confidential Document – not being generally known to the public.

2        31.   Integrated has undertaken numerous measures to ensure that its trade

3    secrets remain secret, including utilizing a secure computer system, limiting access

4    to certain employees, maintaining data on an internal password-protected network,

5    requiring employees to execute confidentiality and non-disclosures agreements, and

6    conducting an exit process upon termination. These measures were taken by

7    Integrated to ensure that Integrated's trade secrets did not inadvertently become

8    public or fall into the hands of competitors. Integrated required Marks to comply

9    with each of these confidentiality requirements.

10       32.   Marks knew or should have known that the information, as described,

11   (1) is confidential; (2) was acquired under circumstances giving rise to a duty to

12   maintain its secrecy or limit its use; (3) was developed or acquired by Integrated at

13   great expense and effort; (4) was maintained as confidential and is not generally

14   available to the public and Integrated's competitors; (5) would provide significant

15   benefit to a competitor seeking to compete with Integrated; and (6) is critical to

16   Integrated's ability to conduct its business successfully.

17       33.   Upon information and belief, Marks intentionally misappropriated and

18   continues to misappropriate Integrated's trade secrets by improperly stealing,

19   disclosing and disseminating them in violation of the New Jersey Trade Secrets Act,

20   N.J.S.A. 56:15-1, *et seq.*

21       34.   Marks is intentionally and willfully misappropriating Integrated's trade

22   secrets in reckless disregard for Integrated's rights.

23       35.   Marks will be or is being unjustly enriched by the misappropriation

24   and/or threatened misappropriation of Integrated's trade secrets and confidential

25   information, and, unless restrained, will continue to threaten to use, actually use,

26   divulge, inevitability disclose, or otherwise misappropriate Integrated's trade secrets

27   and confidential information.

28       36.   Upon information and belief, Marks' actual and threatened

1    misappropriation has been willful and malicious.

2    37.    As a result of the actual and threatened misappropriation of Integrated's

3    trade secrets and confidential information, Integrated will be threatened with loss of

4    business expectancies, customers, its trade secrets and goodwill in amounts which

5    may be impossible to determine, unless Marks is enjoined and restrained by order of

6    the Court. Integrated has also suffered and will continue to suffer damages from

7    Marks' actual and threatened misappropriation of trade secrets.

8                              **THIRD CAUSE OF ACTION**

9                     **Unfair Competition (New Jersey Common Law)**

10    38.    Integrated incorporates by reference and re-alleges as if fully stated

11    herein the allegations set out in the preceding paragraphs.

12    39.    By engaging in the conduct alleged above, Marks has intentionally

13    attempted to and is competing with Integrated using unfair methods and unfair trade

14    practices as detailed above.

15    40.    Marks' actions show willful misconduct with specific intent to harm or

16    injure Integrated's business.

17    41.    Unless restrained, Marks' actions have caused and will continue to

18    cause Integrated immediate and irreparable harm and damages, for which Integrated

19    has no adequate remedy at law.

20                              **PRAYER FOR RELIEF**

21    Integrated prays for the following relief:

22    1.    For injunctive relief, as follows:

23         a.    A preliminary injunction and a permanent injunction enjoining

24    and restraining Marks and all persons or entities acting in concert with her, during

25    the pendency of this action and thereafter perpetually from:

26              i.    Disseminating or sharing Integrated's confidential,

27    property information and trade secrets Marks obtained while she was employed at

28    Integrated including, without limitation, the Confidential Document; and

Complaint for Damages,
Declaratory, and Injunctive Relief          - 9 -          DHILLON & SMITH LLP

1        ii.      Using Integrated's confidential, proprietary information

2   and trade secrets, including use and dissemination in connection with her work for

3   any current and future employers;

4        b.      Transmitting, assisting with the transmission of, or procuring or

5   inducing the transmission of Integrated's confidential, proprietary information and

6   trade secrets Marks obtained while she was employed at Integrated, including,

7   without limitation, the Confidential Document;

8        c.      Directly or indirectly accessing, searching, or attempting to

9   access or search Integrated's website, computer systems, and services in order to

10  engage in specific acts to obtain Integrated's confidential, proprietary information

11  and trade secrets or that violate the terms of the Confidentiality Agreement;

12       d.      Engaging in any activity that violates, or induces others to

13  violate, Integrated's agreements with its employees.

14       2.      An award to Integrated of damages, including but not limited to,

15  compensatory, statutory, punitive, and exemplary damages, as permitted by law and

16  in such amounts to be proved at trial.

17       3.      An award to Integrated of reasonable costs and reasonable attorney's

18  fees, to the extent permitted by law and as contemplated both by the terms of the

19  Confidential Document and the New Jersey Trade Secrets Act.

20       4.      For pre- and post-judgment interest as allowed by law.

21       5.      For such other relief as the Court may deem just and proper.

22  //

23  //

24  //

25  //

26  //

27  //

28  //

Complaint for Damages,
Declaratory, and Injunctive Relief          - 10 -          **DHILLON & SMITH LLP**

1

## DEMAND FOR JURY TRIAL

2
    Integrated demands a trial by jury.

3

4
Dated:  October 23, 2013
                       DHILLON & SMITH LLP

5

6
                     By: _____

7
                       HARMEET K. DHILLON
                       KEN LAU

8
                       JOHN-PAUL DEOL
                       Attorneys for Plaintiff

9
                       Advantage Sales & Marketing LLC

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Complaint for Damages,
Declaratory, and Injunctive Relief
     - 11 -
                DHILLON & SMITH LLP

# EXHIBIT A

## CONFIDENTIALITY, PROPERTY PROTECTION & NON-SOLICITATION AGREEMENT

THIS CONFIDENTIALITY, PROPERTY PROTECTION & NON-SOLICITATION AGREEMENT (this "Agreement") is made as of the date set forth below, by and between ADVANTAGE SALES & MARKETING LLC, a California limited liability company, and its direct and indirect subsidiaries, affiliated entities and divisions (collectively, the "Company"),[1] and _____ ("Employee").

WHEREAS, the Company's clients, customers, and associates are among its most valuable assets;

WHEREAS, in the performance of his/her duties, Employee will be in a position of trust and confidence with the Company and will, of necessity in the performance of his/her job duties, be provided with and have access to and use of trade secrets and other confidential and/or proprietary information developed, obtained by, and/or related to the Company, and its and their clients and customers;

WHEREAS, the Company requires its associates to abide by its Code of Business Conduct and Ethics, which in turn requires the proper use and protection of not only the Company's trade secrets and confidential and/or proprietary information but also the confidential and/or proprietary information entrusted to it by its and their clients and customers;

WHEREAS, the Company is reasonably and legitimately seeking to protect its and their trade secrets and other confidential and/or proprietary information and that of its and their clients and customers.

NOW, THEREFORE, in consideration of (i) the employment or continued employment of Employee by the Company, (ii) the continued receipt and access to trade secrets and other confidential and/or proprietary information associated with Employee's position with the Company, and (iii) Employee's eligibility to be considered for future salary or wage increases, Employee and Employer, intending to be legally bound, agree as follows:

**I.      ACKNOWLEDGMENTS BY EMPLOYEE**

A.      "Confidential Information" includes, without limitation, the Company's:

1.      Trade secrets (including without limitation proprietary prospect, client and customer lists and information; sales, marketing, business and promotional strategies, plans, and programs; pricing; proprietary software and proprietary business processes and methods; strategic sourcing information or analyses; prototypes, models and product specifications; information technology, software, computer systems or programs; finances or accounting information; projections or pro forma financial information; product development information; clients' or customers' contact information; contracts and business relationships; business plans and forecasts; and employment-related policies, procedures, compensation information or formulas, bonus plans or structures);

---

[1] Employment is only with one specific legal entity of the Company, and not with all of the legal entities that constitute the Company; and any references to the "Company" as an employer are intended to refer to the employing entity.

2.      Confidential personnel information and other information related to employees of the Company and its and their clients and customers (including without limitation personal information regarding an employee disclosed to Employee in the course and scope of his/her employment with the Company); and

3.      Confidential managerial or operational matters, projects or business opportunities; and other confidential and proprietary business information.

B.      Employee would not have access to or knowledge of Confidential Information but for his/her employment with the Company.

C.      Employee acknowledges and agrees that s/he will occupy a position of trust and confidence and will, of necessity for the sole purpose of performing his/her job duties for the Company, be provided with and have access to and use of Confidential Information, as defined above.  Employee further acknowledges that:

1.      the Company's businesses are national in scope;

2.      the Company's clients' products and the Company's services are sold, delivered and offered throughout the United States;

3.      the Company has competed and will compete with other businesses that are or could be located in any part of the United States;

4.      the Company has required that Employee make the covenants set forth in this Agreement prior to disclosure of any Confidential Information to Employee and as a condition of both employment and eligibility for consideration for future salary or wage increases;

5.      The provisions of this Agreement are reasonable and necessary to protect and preserve the Company's legitimate business interests and those of its and their clients and customers; and

6.      the Company would be irreparably damaged if Employee were to breach the covenants set forth in this Agreement.

D.      Employee has had the opportunity to consult with Employee's personal attorney before signing this Agreement and acknowledges that after the termination of Employee's employment with the Company for any reason, Employee's compliance with the terms of this Agreement will not unduly burden Employee or interfere with Employee's ability to earn a living.

E.      The obligations of this Agreement shall continue beyond termination of Employee's employment with the Company and are binding upon everyone who has legal authority to represent Employee's interests and/or estate.

F.      Employee agrees to provide a copy of this Agreement to a future employer at the time of accepting employment with such future employer.

## II.    NON-DISCLOSURE

A.    Adequate consideration having been provided, Employee agrees that all Confidential Information provided, communicated to, exchanged, or obtained by him/her shall not be used, disclosed or referenced in any form or manner except in direct connection with the proper performance of his/her job duties or as otherwise provided or required by applicable law.

B.    Unless Employee is provided with express prior written consent by an authorized officer of the Company, Employee shall not use or disclose any Confidential Information, except as directly required to properly perform his/her duties and responsibilities for the Company or otherwise provided or required by applicable law.

C.    Employee understands and agrees that any breach of this provision and/or misuse or unauthorized or otherwise improper disclosure of Confidential Information would cause the Company irreparable harm that could not be reasonably or adequately compensated with damages.

D.    Employee promises and agrees not to engage in any such activity nor to misuse or improperly disclose Confidential Information at any time, including without limitation after termination of employment.

E.    Employee further acknowledges that information that is or later becomes publicly available in a manner unrelated to any breach of this Agreement or misconduct by Employee will not be considered Confidential Information as of the date it properly enters the public domain.  If Employee is uncertain whether something is Confidential Information, Employee agrees to treat the information as Confidential Information until Employee receives clarification from an authorized officer of the Company that it is not Confidential Information.

F.    For the purposes of this Section II and all of its subparts, Confidential Information shall include, without limitation, Confidential Information of or pertaining to the clients and customers of the Company.

## III.    NON-SOLICITATION

A.    For the purposes of this Section III, the following definitions shall apply:

1.    "Employment Period" is defined as the period of Employee's employment with the Company.

2.    "Person(s)" is defined as any individual, corporation, partnership, limited liability company or other entity.

3.    "Covered Client or Customer" is defined as any Person(s) known to be or to have been a client or customer of the Company that Employee specifically represented, called on, conducted business with, or developed a business relationship with during the Employment Period.

B.    Adequate consideration having been provided, Employee agrees that:

1.   During the Employment Period and for a period of one (1) year following Employee's termination of employment (whether voluntary or involuntary) (the "Restricted Period"):

(a)   Employee will not directly or indirectly, either for himself/herself or any Person(s), (i) solicit, within any territory to which Employee was assigned during the Employment Period, the business of any Covered Client or Customer with respect to services, products or activities which compete in whole or in part with the services, products or activities of the Company, or (ii) induce or attempt to induce any Covered Client or Customer to cease doing business with the Company, or in any way interfere with the relationship between such Covered Client or Customer, on the one hand, and the Company, on the other hand; and,

(b)   Employee will not, directly or indirectly, either for himself/herself or any other Persons, (i) induce or attempt to induce any individual who is or was employed by any of the legal entities that constitute the Company during the Employment Period ("Covered Employee") to leave its employ, or (ii) in any way interfere with the relationship between the Company, on the one hand, and any Covered Employee, on the other hand; provided, that this clause (b) shall not apply to any individual whose employment with the Company has been terminated (either voluntarily or involuntarily) for a period of one year or longer prior to Employee's offering such employment or engagement.  Moreover, if during the Restricted Period any Covered Employee accepts employment with any person of which you are an officer, director, employee, partner, shareholder (other than of less than 5% of the stock in a publicly traded company) or joint venturer, it will be presumed that the Covered Employee was hired in violation of this provision ("Presumption").  This Presumption may be overcome by your showing by a preponderance of the evidence that you were not directly or indirectly involved in hiring, soliciting or encouraging the Covered Employee to leave employment with the Company;

2.   In the event of a breach by Employee of any covenant set forth in this Agreement, the term of such covenant will be extended by the period of the duration of such breach.

**IV.    RETURN OF PROPERTY.** Upon request of the Company or upon the termination of employment, whichever occurs first, Employee agrees that he/she will immediately return to the Company all property of the Company and Confidential Information in whatever form retained (*e.g.* written, mechanical, electronic) including, but not limited to, all documents, memoranda, notes, papers, contacts, drafts, data, records, reports, plans, proposals, computer tapes, printouts, software and other information and property, including any copies thereof, or any of the foregoing containing any Confidential Information, that relate to the business of the Company, in Employee's possession or under his/her control.

**V.    REMEDIES.** Because Confidential Information is among the Company's most valuable assets and that of its and their clients and customers, Employee understands that his/her breach of any covenant of this Agreement may lead to immediate termination of his/her employment.  Termination of Employee's employment for any reason shall not limit any remedy available to the Company, at law or in equity, which shall include, without limitation, the following remedies: (a) To obtain damages from Employee; and (b) in addition to its right to damages and any other rights it may have, to obtain injunctive or other equitable relief to restrain any breach or threatened breach or otherwise to specifically enforce the provisions of Section II or III of this Agreement without the necessity of posting a bond, it being agreed that money

damages alone would be an inadequate remedy for such breach.  The rights and remedies of the parties to this Agreement are cumulative and not alternative.

**VI.      WORK FOR HIRE.** All products, improvements, inventions, creations and innovations conceived, developed or made by Employee, individually or with others, during his/her employment or other relationship with the Company, related to the activities or business of the Company, must be disclosed promptly to the Company and shall be the exclusive property of the Company or its nominee.  All copyrights in materials created or made by Employee during his/her employment with the Company related to the activities or business of the Company are, and shall individually and collectively be deemed and considered a work or works made for hire for the purposes of the United States Copyright Law and for all other purposes.  If for any reason Employee's contribution to the copyrightable work shall be found to be anything other than a work or works made for hire, Employee hereby assigns to the Company any right, title or interest he/she may have in the copyright, including, without limitation, any right in any renewal term of the copyright, and any and all other intellectual property rights of ownership in the work. Employee agrees to execute and deliver all documents the Company deems necessary or desirable to obtain and retain copyrights, patents and/or trademark registrations in the United States and foreign countries covering those products, improvements, inventions, creations or innovations and, where necessary, to transfer exclusive ownership of them to the Company or its nominee.  Employee further agrees to execute and deliver all other documents which the Company deems necessary or desirable to confirm, establish, record, and/or maintain the Company's or its nominee's right, title and interest and ownership in any patent, copyright, trademark and other intellectual property rights now known or existing in the future in such intellectual property worldwide and will cooperate fully with the Company or its nominee in connection with any or all of these efforts.

**VII.     NOT EMPLOYMENT CONTRACT.** Employee acknowledges that this Agreement does not constitute a contract of employment for any specific period of time nor does it modify his/her at-will employment relationship, meaning that either Employee or the Company can terminate the employment relationship at any time for any reason, with or without notice or cause.  Employee further acknowledges this Agreement does not constitute a guarantee of future salary or wage increases, which are subject to management discretion.

**VIII.    SUCCESSORS AND ASSIGNS.**  This Agreement will be binding upon Employee and all others acting in concert with Employee and will inure to the benefit of the Company and their successors and assigns.

**IX.      WAIVER.** This Agreement may not be modified or amended except by an instrument in writing signed by the parties.  No term or condition of this Agreement will be deemed to have been waived, except by written instrument of the party entitled to grant such waiver.  Each such waiver will operate only as to the specific term, condition or instance waived and shall not constitute a waiver of such term or condition in any other instance or as to any act.

**X.       GOVERNING LAW.** This Agreement shall be governed by the laws of the State in which Employee resided at the time he/she executed this Agreement (as indicated below), without regard to any conflicts of laws principles thereof that would call for the application of the laws of any other jurisdiction.

**XI.**    **JURISDICTION; SERVICE OF PROCESS.** Any action or proceeding seeking to enforce any provision of, or based on any right arising out of, this Agreement may be brought against any of the parties in the courts of the State of California, County of Orange, or, if it has or can acquire jurisdiction, in the United States District Court for the Central District of California and each of the parties consents to the jurisdiction of such courts (and of the appropriate appellate courts) in any such action or proceeding and waives any objection to venue laid therein.  Process in any action or proceeding referred to in the preceding sentence may be served on any party anywhere in the world.

**XII.**    **SEVERABILITY.** Whenever possible, each provision and term of this Agreement will be interpreted in a manner to be effective and valid, but if any provision or term of this Agreement is held to be prohibited or invalid, then such provision or term will be ineffective only to the extent of such prohibition or invalidity, without invalidating or affecting in any manner whatsoever the remainder of such provision or term or the remaining provisions or terms of this Agreement.  If any of the covenants set forth in Sections II or III of this Agreement are held to be not reasonable and necessary to the Company for the protection of their legitimate interests in the enjoyment of their developed business, to impose an unreasonable burden on Employee, to be against public policy or to be otherwise unreasonable, such covenants will be considered subject to reform by a court of competent jurisdiction to conform its terms to the reasonable intent of the parties with respect to scope, time, and geographic area, and in such lesser scope, time or geographic area, will be effective, binding and enforceable against Employee.

**XIII.**    **ENTIRE AGREEMENT.** This Agreement constitutes the entire agreement between the parties with respect to the subject matter of this Agreement and supersedes all prior written and oral agreements and understandings between the Company and Employee with respect to the subject matter of this Agreement. This Agreement may not be amended except by a written agreement executed by the party to be charged with the amendment.

EMPLOYEE ACKNOWLEDGES THAT HE/SHE HAS CAREFULLY READ THIS AGREEMENT AND UNDERSTANDS AND AGREES TO ALL OF ITS PROVISIONS.

| Task Description:<br>2701. Confident,Prop Prot, and NonSolicit Non CA | Requisition:<br>50641 | New Hire:<br>Marks,Lois |
| --- | --- | --- |

# Confidentiality, Property Protection and Non Solicitation

Please click here to review the Confidentiality, Property Protection & Non-Solicitation Agreement.

I HEREBY CONFIRM THAT I have read and understand the Confidentiality, Property Protection & Non-Solicitation Agreement, and VOLUNTARILY agree to comply with and consent to its terms and conditions.

*"I agree, and it is my intent, to sign this record/document, the Confidentiality, Property Protection and Non Solicitation, and affirmation by clicking on the button below and by electronically submitting this record/document to ASM.   I understand that my signing and submitting this record/document in this fashion is the legal equivalent of having placed my handwritten signature on the submitted record/document and this affirmation. I understand and agree that by electronically signing and submitting this record/document in this fashion I am affirming to the truth of the information contained therein. I understand and agree that by electronically signing and submitting this record/document I am consenting to the provisions contained therein."*

Acknowledgement Agreement - Confidentiality, Non-Solicitation - Non CA :
I agree

*For the purposes of your record-keeping and future reference, we encourage you to print out copies of the documents and policies that you view, acknowledge receipt of, and/or sign.  In addition, it is important to remember that all associates are responsible for being familiar with and complying with the company's policies.*

Generated by ADP VirtualEdge                                                      08/01/2012 - 12:49 PM

# EXHIBIT B



# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES

This case has been assigned to District Judge    Josephine L. Staton    and the assigned Magistrate Judge is    Robert N. Block    .

The case number on all documents filed with the Court should read as follows:

## SACV01664 JLS (RNBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

All discovery related motions should be noticed on the calendar of the Magistrate Judge.

Clerk, U. S. District Court

October 23, 2013
_____
Date

By   Maria Barr
    Deputy Clerk

---

### NOTICE TO COUNSEL

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

**Subsequent documents must be filed at the following location:**

| ☐ Western Division | ☒ Southern Division | ☐ Eastern Division |
|---|---|---|
| 312 N. Spring Street, G-8 | 411 West Fourth St., Ste 1053 | 3470 Twelfth Street, Room 134 |
| Los Angeles, CA 90012 | Santa Ana, CA 92701 | Riverside, CA 92501 |

**Failure to file at the proper location will result in your documents being returned to you.**

---

CV-18 (08/13)           NOTICE OF ASSIGNMENT TO UNITED STATES JUDGES